UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARK JOSEPH NEJMEH,<br>Plaintiff,<br>v.<br>THERIVA BIOLOGICS, INC.,<br>Defendant. | Case No. 3:26-cv-00705-ART-CSD<br>ORDER ON ECF Nos. 2, 10, 11, 22, 27 |

*Pro se* Plaintiff Mark Joseph Nejmeh brought this action against Defendant Theriva Biologics, Inc. on September 16, 2026. Plaintiff alleges that Defendant conducted improper proxy statement solicitations in violation of the Securities Exchange Act of 1934 ("SEA") and associated its regulations and instituted invalid shareholder voting and meeting procedures in violation of Nevada state law. (ECF No. 23). Before the Court is Plaintiff's motion for a temporary restraining order, or in the alternative, a preliminary injunction against Defendant. (ECF No. 2). Plaintiff seeks to enjoin Defendant from "accepting, processing, settling, or completing an exercise of the 16,184,560 New Warrants" approved by shareholders at the August 3, 2026, annual meeting, in addition to disclosures and expedited discovery. *Id.* at 1. For the following reasons, the Court denies Plaintiff's motion.

## I. BACKGROUND

Plaintiff has been a shareholder of Defendant's corporation for approximately four years and currently holds 90,191 shares. (ECF No. 23 at 4). He challenges the proxy statement, voting, and meeting procedures arising out of and relating to the August 3, 2026, shareholder approval of the issuance of "New Warrant Shares."

Both Plaintiff and Defendant agree that the issuance of the New Warrant Shares is governed by the October 16, 2025 Inducement Agreement. (ECF No. 2 at 1; ECF No. 21-1 at 6). Under this agreement, existing warrant holders of Defendant's corporation exercised their warrants in consideration for New Warrant Shares "to purchase up to 16,184,560 shares of common stock." (ECF No. 21-1 at 6). The New Warrant Shares were not immediately exercisable—instead, Defendant was obligated to call a meeting every sixty days after closing until stockholder approval for issuance is obtained. *Id.* Defendant represents that they attempted to call four special meetings regarding the issuance of the New Warrant Shares on December 15, 2025, February 11, 2026, April 9, 2026, and June 5, 2026. (ECF No. 21-1 at 6–7). Each time, the meeting could not be convened because an appropriate quorum of voting shares was not reached. *Id.*

Plaintiff brings two claims against Defendant that the Court will address in chronological order. Plaintiff's second claim against Defendant ("Count II") arises out of Defendant's attempt to convene the December 15, 2025, shareholder meeting. (ECF No. 23 at 7). Plaintiff brings their first claim against Defendant ("Count I") on the basis that Defendant's June 29, 2026, proxy statement constitutes a materially false or misleading solicitation in violation of Section 14(a) of SEA and accompanying regulations. *Id.* at 21.

With respect to Count II, Plaintiff argues that there were impermissible inconsistencies between the required voting quorum threshold stated in Defendant's issued proxy statement for the December 15, 2025, meeting and the quorum mandated by Defendant's bylaws. (ECF No. 23 at 7). Additionally, Plaintiff attended the meeting in-person and contends that Defendant represented the meeting would be adjourned to December 22, 2025, which did not occur. *Id.* at 9. Lastly, Plaintiff alleges that he later received a phone call from Defendant's corporate counsel that sought his approval in not proceeding with December 22, 2025, meeting. *Id.* at 10. Plaintiff characterizes this phone call as

an impermissible proxy solicitation in violation of SEA §14(a). *Id.* In each instance above, Plaintiff alleges a violation of Nevada corporate law in Count II of their complaint. *Id.* at 23–24.

At Defendant's annual shareholder meeting on August 3, 2026, shareholders authorized the issuance of the New Warrant Shares under "Proposal 5." (ECF No. 21-1 at 9). Defendant issued a proxy statement including all proposals standing before shareholders on June 29, 2026. *Id.* at 7.

Plaintiff's Count I claim alleges that Defendant's June 29, 2026, proxy statement violated Section 14(a) of SEA and accompanying regulations, because the statement constitutes a materially false or misleading solicitation. (ECF No. 23 at 21). Plaintiff claims that Defendant's June 29, 2026, proxy instructions on Proposal 5 were "irreconcilable." (ECF No. 2 at 2). Plaintiff points to numbering errors on the set of proposals and discrepancies in the classification of Proposal 5 as "routine" or "non-routine" in different sections of the document. *Id.* at 3. Plaintiff and Defendant appear to agree that a "non-routine" designation would mean that brokers representing shareholders at a meeting lack the discretionary authority to vote uninstructed shares. (ECF No. 2 at 3; ECF No. 21-1 at 7). Plaintiff contests that this designation "decides whether those uninstructed shares fill the room"—whether shareholders decide to attend a meeting or issue instructions—and draws into question how a sufficient quorum was reached to approve Proposal 5. (ECF No. 28 at 15).

Plaintiff connects the allegations raised in Count I and Count II in his reply brief. (ECF No. 28). He alleges that Defendant was permitted to sell 10,204,319 new shares in the interim period between the procedurally deficient attempted December 2025 meetings and final shareholder approval on August 3, 2026. *Id.* at 11. Thus, Plaintiff argues, the procedural issues in December 2025 are relevant to the permissibility of future votes, because "Defendant used the months between to change who could vote." *Id.*

In his motion for a TRO, Plaintiff seeks to enjoin Defendant from "accepting, processing, settling, or completing an exercise" of the New Warrant Shares, as well as preventing Defendant from "issuing, registering, delivering, or transferring common shares underlying those warrants." (ECF No. 2 at 1). Plaintiff alleges that the New Warrant Shares became exercisable on August 3, 2026, and expire on August 3, 2031. *Id.* at 2. In addition, Plaintiff seeks expedited discovery into Defendant's records regarding the approval of the New Warrant Shares and any subsequent action taken with respect to the warrants after August 3, 2026, along with sworn status reports from Defendant. *Id.*

Defendant responded to Plaintiff's motion (ECF No. 15) and corrected their incomplete response (ECF No. 21). Plaintiff filed a reply in support of their motion (ECF No. 28). Before the Court is also Plaintiff's motion for leave to exceed the page limit of their reply (ECF No. 29). Per the Court's order (ECF No. 20), Defendant filed a supplement to their response (ECF No. 32). Since filing his motion, Plaintiff has since submitted multiple requests seeking leave to file supplemental documentation supporting his action for a TRO or a preliminary injunction. (*See* ECF Nos. 10, 11, 22). Nestled within his motions seeking leave to file supplemental documentation, Plaintiff has brought forth two new motions before the Court: "Emergency Motion for Limited Temporary Restraining Order and Expedited Verified Disclosure Concerning Blank Check Preferred Stock and Any Shareholder Rights Plan" (ECF No. 10 at 12) and "Motion for Leave to Conduct Limited Expedited Discovery From Defendant and From Holders of the New Warrants, and for a Rule 30(b)(6) Deposition of Defendant" (ECF No. 11-2).

## II. LEGAL STANDARD

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). A preliminary injunction is an "extraordinary" and "drastic" remedy that requires the moving party to clearly show that they carry the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (cleaned up).

While *Winter* requires a plaintiff to show likelihood of irreparable harm, the Ninth Circuit applies a sliding scale approach to the other factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35, 1139 (9th Cir. 2011). This means that if the movant makes a threshold showing of "serious questions going to the merits," even short of a likelihood of success, then strong showings on the remaining factors may allow a court to issue the injunction. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citing *Garcia v. Google Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). If the movant fails to show serious questions going to the merits, however, the other factors may not otherwise justify granting the injunction. *Id.*

Because the analysis for issuing a TRO and a preliminary injunction is "substantially identical," *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court will address Plaintiff's motions for equitably relief jointly.

## III. DISCUSSION

The Court denies Plaintiff's motion for a TRO or a preliminary injunction, because Plaintiff has not sufficiently demonstrated that he will suffer an irreparable injury in the absence of equitable relief. It appears that Plaintiff advances two separate theories of harm from Defendant's actions, which the Court will address in turn. First, Plaintiff argues that he suffers an informational injury to "his right to receive materially accurate proxy information and to exercise an informed vote." (ECF No. 23 at 5). Additionally, Plaintiff claims that

the issuance of the New Warrant Shares "would dilute his voting interest." (ECF No. 23 at 6).

Plaintiff's alleged informational harm is redressable, because Defendant purports to soon take remedial action to address Plaintiff's exact concerns and monetary damages remain available. Defendant has submitted a sworn affidavit from Theriva Biologic's Chief Executive Officer that the corporation intends to convene a stockholder meeting in "the coming weeks…at which its stockholders will again vote on Warrant Exercise Approval using corrected proxy materials." (ECF No. 15-1 at 6). A valid proxy statement would cure Plaintiff's alleged informational injury challenging the misleading or false shareholder approval of the issuance of New Warrant Shares. Furthermore, Plaintiff must demonstrate "both economic loss and proximate causation" when bringing a Section 14(a) claim on the basis of an improper proxy solicitation. *Innovative Media Grp., Inc. v. Beys*, 2024 WL 4349457 at *6 (D. Nev. Sept. 30, 2024) (citing *New York City Emp.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010)). Because Plaintiff must plead economic loss for their complaint to succeed, any loss would be compensable by monetary damages. Plaintiff's alleged harm in the absence of equitable relief therefore does not rise to the level of "irreparable harm."

Furthermore, Plaintiff does not suffer "irreparable harm" from the theoretical dilution of his shareholder voting power should the New Warrant Shares be exercised. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction…a plaintiff must *demonstrate* immediate threatened injury as a prerequisite." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff has neither demonstrated that he is in imminent danger of harm, nor that his injury is irreparable and not redressable by monetary damages.

Defendants maintain that the New Warrant Shares have not yet been exercised by any shareholder, it would be impractical for any shareholder to

exercise them under current stock price conditions, and that Plaintiff only holds approximately 0.2% of outstanding shares and any dilution of existing power would be limited (ECF No. 21-1 at 3, 11). The Court acknowledges that stock prices are subject to change, and it is possible that the New Warrant Shares could be exercised in the interim. However, given that Defendant is shortly planning on holding a re-vote on the shareholder approval of issuing the New Warrant Shares (*see* ECF No. 15-1 at 6), Plaintiff's fear is too speculative to support his claim for injunctive relief. Plaintiff has not provided a concrete justification for why there is an "immediate threatened injury" to his current voting power, aside from speculative allegations concerning poison pills, contemplated reverse mergers, and similar patterns in other corporations (*see* ECF No. 28 at 2) that are tangential to the motion for a TRO or preliminary injunction.

Plaintiff's alleged harm of diluted voting power is not irreparable. Plaintiff holds approximately 0.2% of outstanding shares (ECF No. 21-1 at 3), and any dilution would be subject to how many New Warrant Shares are exercised, if at all. This Court finds persuasive the reasoning of other courts that the dilution of an already limited shareholder's voting power does not constitute irreparable harm. For example, the District of Arizona held that when a shareholder possesses a "small minority interest" in a corporation, the shareholder has not alleged irreparable harm to warrant equitable relief when there is a "one-tenth of one percent reduction in voting power." *Barber v. Arkin*, 2008 WL 4737882 at *2 (D. Ariz. Oct. 29, 2008) (noting that shareholder owned 1.4% of the corporation), *but cf. Bourque v. Metz*, 2014 WL 12855623 at *3 (D. Ariz. Feb. 6, 2014) (finding irreparable harm from "substantial" dilution of majority shareholder's stock). Any dilution of Plaintiff's minority share of ownership in the corporation would be quantifiable and redressable through monetary damages. To the extent that Plaintiff is alleging economic harm from a potential decrease in his share values if the New Warrant Shares are exercised, this harm would also be redressable

through monetary damages. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("'[M]onetary injury is not normally considered irreparable.'") (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury[.]").

Because Plaintiff has failed to demonstrate that he suffers irreparable harm in the absence of his requested relief, Plaintiff's motion for a TRO or preliminary injunction fails on this point. The Court will therefore not address the other factors in the *Winter* analysis. *See Oakland Trib., Inc. v. Chron. Pub. Corp.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("[P]laintiff must demonstrate that there exists a significant threat of irreparable injury…because [plaintiff] has not made that minimum showing we need not decide whether it is likely to succeed on the merits."); *Sidibe v. MEI-GSR Holdings, LLC*, 2020 WL 1516807 at *4 (D. Nev. March 27, 2020) ("And the Court need not consider the additional Winter factors having found that Plaintiff fails to establish the necessary requirement of likely irreparable harm.").

The Court notes that in his reply brief to Defendant's opposition to a TRO, Plaintiff raises new and distinct requests for relief under the umbrella of his initial motion for a TRO. Plaintiff argues that "the most important relief Plaintiff seeks is the elimination of the poison pill, because a poison pill tells potential buyers to stay away." (ECF No. 28 at 3). He also requests, among other forms of relief, that the Court issue a one-year moratorium on the exercise of New Warrant Shares and mandate remote shareholder participation and independent election inspectors should a re-vote of the proposal occur. *Id.* The Court declines to consider these newly raised requests for equitable relief in Plaintiff's reply. Defendant has not had the opportunity to meaningfully respond to Plaintiff's newly raised requests for relief. Although Defendant did briefly address the issue

in a subsequent filing (ECF No. 32 at 4), the Court had granted Defendant leave to supplement their opposition in light of Plaintiff's failure to file a complete copy of their complaint – not as an additional reply brief or amended response (ECF No. 20).

The Court also will deny Plaintiff's motions for supplemental filings to support his motion for a TRO or preliminary injunction (ECF Nos. 10, 11, 22). Pursuant to Local Rule 7-2(g), a party "may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." The Court finds that good cause is lacking here. Plaintiff has filed over 360 pages of supplemental information addressing, among other issues, historical transactions entered by Defendant, non-party market comparators to Defendant, and information about the Defendant's corporate composition. *See id.* The Court credits Defendant's argument that the provenance of many of Plaintiff's filings from third-party sources is unclear, some of the filings are explicitly marked as drafts, and others appear to be patent filings irrelevant to this action. (ECF No. 32 at 7). The Court declines to provide Plaintiff leave to file these supporting documents and will instead limit its analysis to the motions and responses directly associated with Plaintiff's motion for a TRO or preliminary injunction. (*See* ECF Nos. 2, 21, 23, 28, 32). As for the two aforementioned motions nestled within these supplemental filings (ECF Nos. 10 at 12, 11-2), the Court declines to consider them. Should Plaintiff wish to refile these motions, he must file them in accordance with the procedures laid out in the local rules.

## IV. CONCLUSION

It is therefore ordered that Plaintiff's motion for a temporary restraining order, or in the alternative, motion for a preliminary injunction (ECF No. 2) is DENIED.

It is therefore ordered that Plaintiff's motions (ECF Nos. 10, 11, 22) to file supplemental documents in support of ECF No. 2 are DENIED.

It is therefore ordered that Plaintiff's motion for leave to file excess pages in his reply (ECF No. 27) is GRANTED.

DATED THIS 13th day of October 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE